Filed 12/5/23  P. v. Vassallo CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

THE PEOPLE,

     Plaintiff and Respondent,

v.

LIA VASSALLO,

     Defendant and Appellant.

E079778

(Super.Ct.No. FWV22002155)

OPINION

APPEAL from the Superior Court of San Bernardino County.  Richard V. Peel, Judge.  Affirmed.

Michelle T. LiVecchi-Raufi, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Donald W. Ostertag and Brendon W. Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Lia Vassallo was sentenced to the middle term of seven years for attempted murder and an additional one year for use of a deadly weapon. Vassallo contends that the trial court erred both by failing to impose the lower term of five years and by failing to strike the deadly weapon enhancement. We disagree and affirm.

## BACKGROUND[1]

The victim reported to the police that while walking his dog in the morning, he noticed that lights had been left on inside a car. He attempted to inform Vassallo, the car's occupant, but she did not want to talk to him. Later, while returning home, the victim encountered Vassallo outside of her car and walking with the aid of a walker. She asked him, "What's your problem?" Vassallo then called him a "fag" and a "fucker" and threatened to cut him with a knife. As the victim attempted to avoid her, she blocked him with her walker, pulled out a knife, and swung it at him. Vassallo then tackled the victim to the ground and struck him with the knife approximately 30 times. After the fight ended, the victim called out to a neighbor to call the police. The victim's lung was punctured twice, and he was hospitalized for five days as a result of the attack.

Vassallo gave police a different account of the incident. She said that after parking her car, the victim walked toward her and told her that her car lights were out. She ignored the victim. After he walked away, Vassallo exited her car, grabbed her walker, and headed toward a gas station for coffee. As she walked down the street, the

---

[1] Defendant stipulated that the police reports contain a factual basis for her plea. Our summary of the facts is drawn from those reports.

victim approached and blocked her path. The victim asked, "Do you want to start shit?" The victim then told Vassallo that he was trying "to make friends with" her, but she declined and asked him to step aside. The confrontation escalated, and the victim pushed her forehead with his fingertips. Vassallo warned the victim that if he pushed her again, then they would fight. The victim then pushed her on her chest, and she responded by brandishing a pocketknife. The victim wrestled with her, blocked her knife hand, and wrapped his free arm around her neck and shoulder, and they fell to the ground. Vassallo stabbed the victim "anywhere [she] could." Eventually, she stood and took a seat on her walker. The victim also stood and told her that the police had been called. Vassallo later told the police that she had been diagnosed with schizophrenia and hears voices in her head. She stated that she takes three different medications daily but did not take them on the day of the incident.

Vassallo was charged with attempted murder. (Pen. Code, §§ 664, 187, subd. (a); unlabeled statutory citations refer to this code.) The complaint further alleged that she personally used a deadly and dangerous weapon during the commission of the offense. (§ 12022, subd. (b)(1).) Vassallo pled guilty and admitted the enhancement.

At sentencing, defense counsel and the court discussed the possibility of continuing the hearing to allow counsel "to explore a little bit more about her mental health" and pursue "alternatives" such as mental health court or mental health diversion. The court informed defense counsel that its tentative decision was to impose the middle term and that continuing the hearing for further exploration of any mental health issues

would not "harm[]" Vassallo or "prejudice[] her in any manner." Vassallo personally declined the offer of such a continuance.

Defense counsel noted that the victim had two pending criminal cases and a restraining order against him and that he allegedly had threatened to beat his neighbors with a baseball bat. Counsel also argued that the victim was the initial aggressor in the incident with Vassallo. Counsel also emphasized that Vassallo had a history of receiving psychiatric treatment, was disabled and homeless, was 46 years old, and had no prior convictions. Defense counsel asked the court to impose the low term, arguing that it was required because Vassallo had "experienced psychological trauma" within the meaning of section 1170, subdivision (b)(6). Counsel also asked the court to strike the deadly weapon enhancement in the interest of justice.

The trial court noted that Vassallo's mental health issues appeared to be self-reported and that the probation department had no additional information to determine whether any mental health issues were a mitigating factor. The court again offered Vassallo a continuance to develop the evidence concerning her mental illness, but she "continue[d] to reject putting this over in order to explore any mental health issues." The court acknowledged that Vassallo's age and lack of a prior criminal record were mitigating factors. The court also acknowledged that the victim may have been the initial aggressor, but the court concluded that the victim's conduct did "not excuse or justify the level of force used by" Vassallo, which "[c]learly . . . went above and beyond any need

4

for self-defense."  The court declined to impose the low term or dismiss the enhancement, sentencing Vassallo to the middle term of seven years plus one year for the enhancement.

DISCUSSION

A.      *Imposing the Middle Term Was Not an Abuse of Discretion*

Vassallo argues that the court abused its discretion by not imposing the low term since the record showed her mental illness contributed to the offense, pursuant to section 1170, subdivision (b)(6)(A).  In the alternative, she argues that the court abused its discretion by declining to impose the low term, given the weight of the mitigating circumstances.  We disagree.

We review the sentencing court's choice of term for abuse of discretion.  (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.)  The appellant must ""'"show that the sentencing decision was irrational or arbitrary.  [Citation.]"'"" (*People v. Carmony* (2004) 33 Cal.4th 367, 376 (*Carmony*).)

Section 1170, subdivision (b)(6)(A), "requires a sentencing court to impose the lower term if 'a contributing factor in the commission of the offense' was that the defendant 'has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence.'"  (*People v. Kelly* (2022) 87 Cal.App.5th 1, 5-6, review granted March 22, 2023, S278503; see § 1170, subd. (b)(6)(A).)  "But the lower term need not be imposed if 'the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interest of justice.'"  (*Id*. at p. 6, fn. omitted.)  In

5

addition, section 1170, subdivision (b)(7), permits a trial court to impose the lower term in its discretion, even if there is no evidence of the circumstances listed in subdivision (b)(6).

Vassallo argues that under subdivision (b)(6)(A) of section 1170 the trial court was required to impose the low term unless it found that aggravating circumstances outweighed mitigating circumstances. The argument fails for at least two reasons. First, the statute applies if "psychological . . . trauma" contributed to the commission of the offense. (§ 1170, subd. (b)(6)(A).) But the record contains no evidence that Vassallo has suffered psychological trauma, let alone that any such trauma contributed to the offense. Rather, the record reflects that Vassallo claims to have been diagnosed with mental illness. Having suffered psychological trauma is not the same thing as having mental illness—one could be mentally ill without having suffered psychological trauma, and vice versa. Because the record contains no evidence of psychological trauma (and hence no evidence that such trauma contributed to the offense), the presumption requiring the low term under subdivision (b)(6)(A) of section 1170 was never triggered.

Second, assuming for the sake of argument that mental illness constitutes psychological trauma within the meaning of subdivision (b)(6)(A) of section 1170, the presumption still was not triggered, because the trial court did not find that Vassallo was mentally ill. Rather, the court followed the probation report in declining to consider Vassallo's alleged mental illness as a mitigating factor, because there was no evidence of it apart from Vassallo's self-reports. The court offered Vassallo a continuance in order to

6

develop the issue further, but she declined.  The evidence of Vassallo's mental illness—namely, her self-reports—was not so strong as to compel a finding in her favor, so the court's failure to find that she was mentally ill is not reversible error.  (See *In re I.W.* (2009) 180 Cal.App.4th 1517, 1528, disapproved on another ground in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.)

Putting aside subdivision (b)(6)(A) of section 1170, Vassallo argues that the court abused its discretion by declining to impose the low term based on the totality of the mitigating circumstances.  She asserts that the mitigating circumstances included her lack of any criminal history, her homelessness and mental illness, and the facts that the victim was the initial aggressor and had a history of aggression.  We are not persuaded.  The trial court considered all of those mitigating circumstances but reasonably concluded that they were of relatively little weight compared to the seriousness and brutality of Vassallo's attack, in which she stabbed the victim approximately 30 times and punctured his lung twice.  That determination was not irrational or arbitrary, so it did not constitute an abuse of discretion.  (*Carmony*, *supra*, 33 Cal.4th at p. 376.)

B.      *Declining to Strike the Enhancement Was Not an Abuse of Discretion*

Vassallo argues that the trial court abused its discretion by declining to dismiss the deadly weapon enhancement, because the underlying offense was connected to mental illness, under section 1385, subdivision (c)(2)(D).  We disagree.

We review a trial court's denial of a request to dismiss a sentence enhancement under section 1385 for abuse of discretion.  (*Carmony*, *supra*, 33 Cal.4th at pp. 373-374.)

7

Section 1385, subdivision (c), provides as follows: "(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute. [¶] (2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances [listed in the statute] are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2).) One of the listed mitigating circumstances is that "[t]he current offense is connected to mental illness." (§ 1385, subd. (c)(2)(D).) "A court may conclude that a defendant's mental illness was connected to the offense if, after reviewing any relevant and credible evidence, . . . the court concludes that the defendant's mental illness substantially contributed to the defendant's involvement in the commission of the offense." (§ 1385, subd. (c)(5).)

For the reasons already given, the trial court was not required to afford great weight to Vassallo's alleged mental illness in deciding whether to dismiss the enhancement. The court did not credit Vassallo's self-reports of mental illness, and Vassallo declined the court's offer of a continuance to marshal additional evidence. The evidence before the court did not compel a finding that Vassallo was mentally ill, so the court's failure to find that she was mentally ill does not constitute error. (*In re I.W.*, *supra*, 180 Cal.App.4th at p. 1528.) The mitigating factor that the offense was

8

"connected to mental illness" (§ 1385, subd. (c)(2)(D)) therefore did not apply, so

Vassallo's argument fails.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ          <br>J.

We concur:

RAMIREZ          <br>       P. J.

MILLER          <br>     J.